ALONZO C. SCOTT and Wife *vs.* WILLIAM AUSTIN.

March 1, 1887; On Rehearing, May 20, 1887.

Usury—Assignee of Mortgage.—The statutory exception, by the terms of which "*bona fide* purchasers of negotiable paper" are protected from the avoiding effects of usury, is not applicable to mortgages securing negotiable paper.

Same—Action to cancel Securities — Offer to pay Debt and Lawful Interest.—One seeking, as plaintiff in an equitable action, the cancellation of usurious securities given by him, should offer in his complaint to pay the real amount of the debt, with lawful interest; this requirement of equity has not been abrogated by our statute.

## ON REHEARING.

Usury—Action to cancel Securities — Offer to pay Debt and Lawful Interest.—*Held*, under the statute, (overruling a former decision in this case,) that one who, as a plaintiff, seeks the avoidance and cancellation of securities for usury, need not, as a condition of obtaining such relief, offer to pay what he has received, with legal interest.

Same—Usurious Mortgage—Sale under Power—Purchaser with Notice.—The fact that a mortgage, void for usury, has been foreclosed by sale under a power, the purchaser having notice of the usury, does not prevent the mortgagor from avoiding the sale and the mortgage by an action for that purpose.

Appeal by plaintiffs from a judgment of the district court for Swift county, entered on the report of C. L. Brown, Esq., referee.

*E. T. Young* and *Rogers & Hadley*, for appellants.

*S. H. Hudson*, for respondent.

The following is the opinion on the original hearing of the cause:

DICKINSON, J.   The plaintiff Alonzo C. Scott, for a usurious consideration, made to one Hayes his negotiable promissory notes, and secured the same by a mortgage upon his real estate.   The defendant purchased the notes and mortgage · before maturity, in good faith, and without notice of the usury.   The defendant afterwards, and after he had received notice of the usury, having sold the mort-

gaged premises under the power of sale contained in the mortgage, the defendant himself being the purchaser, this action was brought to avoid the mortgage sale and the mortgage, as well as the notes, and to secure their surrender and cancellation.

The question arises whether, under our statute, the enforcement, by a *bona fide* purchaser, of a mortgage securing usurious negotiable paper can be opposed by the fact of usury; or, in other words, whether the mortgage is protected against that defence, as the notes are. The statute declares that all usurious notes, conveyances, contracts, and securities "shall be void, except as to *bona fide* purchasers of negotiable paper, as hereinafter provided, in good faith, for a valuable consideration, before maturity." Laws 1879, *c.* 66, § 3. Is this exception applicable only to negotiable paper, or does it also include mortgages securing such paper? This law avoiding all usurious instruments and securities was first enacted in 1877. At the time of this enactment it was the law of this state, and long had been, as determined by the decisions of this court, that mortgages securing negotiable paper were not invested with the peculiar privileges belonging to the negotiable instruments. *Johnson* v. *Carpenter,* 7 Minn. 120, (176,) decided in 1862; *Hostetter* v. *Alexander*, 22 Minn. 559, decided in April, 1876. And the same principle has been since recognized and affirmed in *Blumenthal* v. *Jassoy*, 29 Minn. 177, (12 N. W. Rep. 517,) and in *Oster* v. *Mickley*, 35 Minn. 245, (28 N. W. Rep. 710.) This having been established as the law of the state before this enactment, it seems to us impossible to construe the excepting clause under consideration as having been intended to change the law as to such securities, so that, as respects the defence of usury, they should be invested with the same protection in favor of *bona fide* purchasers as was declared in favor of the "purchasers of negotiable paper." The express exception preserving the protection ordinarily given to negotiable paper cannot by implication be construed to create the same exemption in respect to mortgage securities.

But the plaintiffs make no offer to pay the real amount of the debt, with legal interest, for which the notes and mortgage were given; and, upon this ground, their right, as plaintiffs, to the equitable interference of the court, is opposed. It is so well settled that it may

be accepted without discussion, unless a different rule has been established by our statute, that when one comes as a suitor to a court of equity, invoking the exercise of its peculiar powers to declare a forfeiture of a usurious debt for which he has received a valuable consideration, relief will be granted, in general, only upon condition that he repay what he has received, with lawful interest; and that the absence of an offer thus to do what is equitable is a sufficient reason for dismissing the suit. *Rogers* v. *Rathbun,* 1 John. Ch. 367; *Fanning* v. *Dunham,* 5 John. Ch. 122, 142, (9 Am. Dec. 283;) *Ballinger* v. *Edwards,* 4 Ired. Eq. 449; *Ware* v. *Thompson,* 13 N. J. Eq. 66; *Ruddell* v. *Ambler,* 18 Ark. 369; *Noble* v. *Walker,* 32 Ala. 456; *Purnell* v. *Vaughan,* 82 N. C. 134; *Campbell* v. *Murray,* 62 Ga. 86; *Jordan* v. *Trumbo,* 6 Gill & J. 103; *Mason* v. *Gardiner,* 4 Brown, Ch. 436; Pom. Eq. Jur. §§ 391, 397.

This is not opposed in principle to the decision in *Coolbaugh* v. *Roemer,* 32 Minn. 445, (21 N. W. Rep. 472.) The distinction between that case and this is well shown in the opinion of Lord Chancellor Selborne in *Jervis* v. *Berridge,* L. R. 8 Ch. App. 351, in the course of which he says (p. 358): "There are, indeed, certain cases, * * * where the controversy relates to usurious or other unlawful transactions, in which the whole *locus standi in curia* of the plaintiff is dependent on an election, which must be declared by the bill, to forego legal rights for the sake of equitable remedies."

Section 6 of the act above referred to is as follows: "Whenever it satisfactorily appears to a court that any bond, bill, note, assurance, pledge, conveyance, contract, security, or evidence of debt, has been taken or received in violation of the provisions of this act, the court shall declare the same to be void, and enjoin any proceeding thereon, and shall order the same to be cancelled and given up." This is almost the exact language of a section of the New York statute which was in force when this law was enacted, and it is probable that this provision of our law was taken from that of New York. If this be so, it is a fact of some significance that our legislature omitted to enact the immediately preceding section of the statute of New York, which expressly provided that in such an action it should not be necessary for the plaintiff to pay or offer to pay any principal or interest, nor should

the court require that to be done as a condition of granting relief. But, without regard to this circumstance, we are of the opinion that our statute was not intended to abrogate the principles by which courts of equity have always been guided in the exercise of their jurisdiction. If such an effect is to be given to the statute, it is only because its provisions, being unqualified in terms, must be deemed to be absolutely unqualified in effect by any opposing principle of equity jurisprudence. The results of such a construction would be such as to render it most improbable that such an effect was intended to be given to the law. Suppose, for instance, that in a case like this the mortgaged premises should be sold, upon foreclosure, to a person having no notice of the usury; the mortgagor knowing of the foreclosure proceedings, but taking no steps to prevent the same. And we may further suppose that the mortgagor afterwards stands by in silence, and sees the purchaser make valuable and lasting improvements upon the property. Years after the foreclosure sale, he brings an action like this to annul the sale and the usurious security. The mortgage being void, he would be entitled to recover, if the statute is to have an unqualified effect according to its terms, and without regard to the established equitable principles by which such a case would ordinarily be controlled. It cannot be supposed that this statute was intended to have so broad a scope. Yet, in the absence of any language indicating that one principle of equity jurisprudence should be disregarded in such actions, but that all others should remain unaffected, we are unable to make any distinction. The only alternative is to read the statute in harmony with, and not as subversive of, universally recognized principles of equity. We therefore think that plaintiffs are not entitled to relief, and the judgment is affirmed.

MITCHELL, J. I am unable to assent to the last proposition laid down in the foregoing opinion. I think that the provisions of section 6 of the statute above cited were intended to apply as well to actions brought by borrowers for relief against usurious notes or other securities as to those brought against them in which the usury is set up by way of defence; and that, in the former equally with the latter, the note or other security, whenever its usurious character is

made to appear, should be declared void, and ordered cancelled and delivered up unconditionally, and without requiring the borrower to repay the lender the amount advanced, with legal interest. If this section does not mean this, I am unable to conceive what purpose it was intended to subserve. Its language is very broad and general, and not suggestive of any distinction between actions in which the borrower, as plaintiff, pleads the usury as a cause of action, and those in which, as defendant, he sets it up by way of defence. Of course, it must be understood as limited to actions between the borrower and a party against whom the illegality of the contract may be asserted; for *bona fide* purchasers of negotiable paper before maturity are ex-- cepted by the express terms of the statute, and where property mortgaged or pledged to secure a usurious debt has been sold to a *bona fide* purchaser for valuable consideration, of course his title *to the property* is protected by other well-recognized rules of law.

BERRY, J. I agree with my Brother Mitchell.

---

The following opinion was filed after a rehearing:

DICKINSON, J. After the filing of the former decision in this case,. a reargument was ordered by the court of its own motion, as to the question whether, under our statute, one who, as plaintiff, seeks the avoidance and cancellation of securities for usury, must, as a condition of obtaining such relief, offer to repay what he has received, with legal interest. The rehearing was ordered for the reasons that this point had not been argued on the part of the appellants at the former hearing; that the court had been unable to agree upon the decision; and, even after it had been made by a divided court, some doubt had been felt by the majority of the court as to the correctness of its conclusion, and because the question was felt to be one of general interest. Since writing and filing the former opinion, and affected by some considerations presented at the reargument, the views of members of the court who united in that opinion have changed as to the proper construction and effect of the statutes, and we now concur·

with Justices Mitchell and Berry in the conclusion expressed by them in their dissent from our former opinion.

Our conviction that the construction before put upon the statute was erroneous, rests chiefly upon the following considerations, in addition to what was said in the dissenting opinion before filed:

Bearing in mind that the question is whether the legislature intended that the relief authorized by section 6 of the act of 1879 (Laws 1879, *c.* 66) should be afforded to a plaintiff only upon his complying with the general rule of equity, by paying the principal debt with legal interest, or whether it was intended that the specified relief should be decreed without that condition of repayment, we find in a section of the same act, preceding that which we are called upon to construe, a provision which is strongly indicative of the latter intention. At the end of section 3, after making provision for the protection of *bona fide* purchasers of negotiable paper, it is declared: "In any case, however, where the original holder of a usurious note sells the same to an innocent purchaser, the maker of the note or his representatives shall have the right to recover back from the said original holder the amount of principal and interest paid by him on said note." By force of this statute, the maker of a note affected with usury, who has paid it in full to an innocent indorsee, may institute an action against the payee in the same court whose jurisdiction is invoked in this case, and recover, not merely the usurious interest, but the whole principal and interest paid. The reason upon which the equity rule above referred to was founded, was the court's abhorrence of forfeitures. It cannot be considered to have been the intention of the legislature that the unqualified terms of section 6 should be read in subordination to that rule of equity, if it is apparent that the enactment embodied a purpose directly opposed to the very reason upon which alone the rule itself rests. It is not probable that the legislature intended that the provisions of section 6 should not be so applied in favor of a plaintiff as to operate as a forfeiture of the debt, if it is apparent that the legislative purpose was that the usurious debt *should* be forfeited. Such a purpose is expressed, with respect to usurious notes, in the provision above recited, and thus contributes to the conclusion that while, by enforcing the

v.36m—30

provisions of section 6 according to its terms, the court will be enforcing a forfeiture, yet that is in accordance with the purpose of the law. The maker of the notes might defend and defeat an action by the payee to recover upon them, upon the ground that they were void. If they have been transferred to an innocent purchaser, and the maker then pays them, he may, by force of section 3, recover the whole amount from the usurer; and, without payment having been made, a similar result is accomplished under section 6 by a judgment declaring their invalidity, and directing their cancellation, or by injunction, "whenever it satisfactorily appears to a court" that the obligations are usurious and void.

It is true that the provision in section 3, above recited, is not applicable to all usurious instruments, but it is applicable in perhaps the largest class of instruments in which usury is involved; and this provision, in connection with that in the same section declaring all usurious contracts *void*, affords strong reason for the conclusion that the legislature did not intend that the unqualified terms of section 6 should be impliedly qualified by a rule, the whole reason for which was to prevent forfeitures.

The point made by the respondent, that the plaintiff is equitably estopped from the relief sought, because he suffered the foreclosure sale to take place before invoking this remedy, is answered by the fact that the mortgage was *void*, and that the defendant had notice that it was so before he foreclosed the mortgage, and purchased the property.

Our former decision herein is overruled, and the judgment appealed from is reversed.

GILFILLAN, C. J. With a good deal of hesitation, I concur in the result reached by this opinion.