(Opinion published 51 N. W. Rep. 814.)

---

JOHN W. CHASE *et al. vs.* NEW YORK MORTGAGE LOAN Co.

Argued Jan. 25, 1892.   Decided March 15, 1892.

**Usury—A Question of Fact.**—Whether the purchase of securities or other property, or the execution of a collateral contract by the borrower in connection with a loan, and as a part of the consideration and inducement therefor, will make the transaction usurious, is ordinarily to be determined as a question of fact in the trial court.

Appeal by plaintiffs, John W. Chase and Emma M. Chase, his wife, from the judgment of the District Court of Hennepin County, *Hooker*, J., entered September 30, 1891, that plaintiffs take nothing by this action and pay costs, $17.46.

The defendant, the New York Mortgage Loan Company, is a corporation organized August 26, 1890, under the laws of Minnesota and doing business at Minneapolis. The facts as claimed by it are as follows: On September 22, 1890, the plaintiff John W. Chase borrowed of defendant $1,925 on each of three houses and lots owned by him, and he and his wife gave it three mortgages, each for that sum; one on each house and lot. He on that day also bought of defendant three investment bonds, for each of which he paid down $250 out of the money borrowed, and agreed to pay $11.17 more on the 22d day of each and every month during the next ten years. He paid the first $11.17 on that day. He gave defendant his three notes with the mortgages, each for $1,925, due in five years, bearing interest at seven per cent. a year, payable

semiannually. By the contract he had the right also to renew them on the same terms for five more years. He paid out of the money borrowed $10, for expenses of each of the three loans, and some other small items. He also paid the $250 and the first monthly installment, $11.17, and received the balance, $1,675, on each loan. By the terms of the investment bond, defendant obligated itself to pay Chase ten years thereafter $1,925 on condition that he paid the monthly installments of $11.17 each, for the ten years. These investment bonds he immediately assigned to the company as additional security for the loans.

The plaintiff claimed that he applied to the company to borrow only $1,675 on each of the three houses and lots, that defendant refused his application but offered to loan him $1,925 on each, if he would purchase an investment bond with each loan, and assign it as collateral security. That defendant offered to loan him $1,400 on each house and lot upon straight mortgages. He claimed that the purchase of the investment bonds was a scheme to cover up usury and evade the law; that defendant anticipated that he would forfeit the bonds by failure to pay monthly installments during the first two years, and it would get as a bonus the money paid down on each bond in addition to the interest on his notes and mortgages. That he was pressed for money, could not get it elsewhere, and was compelled to submit to defendant's terms.

This action was commenced in February, 1891, by Chase and wife, to have the notes and mortgages adjudged void for usury. It was tried on May 15, 1891, before the court. Findings were filed on August 5, 1891. Among other things, the trial court found that the investment bonds were made in good faith and were not used in the transaction as a shift or device to evade the usury laws; that the fee of $10 charged for expenses of each loan was a reasonable charge; that at the time Mr. Chase made the loans and purchased the investment bonds he understood fully what he was doing, and what he was purchasing, and entered into the agreement with a full knowledge of the undertaking both on his part and on the part of the defendant, and ordered judgment entered for defendant on the merits with costs. This was done and the plaintiffs appealed to this court.

For the better understanding of the case, one of the investment bonds is here set out in full. It is as follows:

## INVESTMENT BOND.

Number 6.                                          Dollars 1,925.00

The New York Mortgage Loan Company of Minneapolis, Minnesota. Installment Bond. Know all men by these presents that, in consideration of the payment of $1,340.40, (thirteen hundred forty and 43-100 dollars,) to be made in equal installments, of $11.17, on the 22d day of each and every month of each and every year, for a period of ten years from date hereof, the New York Mortgage Loan Company of Minneapolis, Minnesota, promises and agrees to pay John W. Chase or order the sum of $1,925.00, (nineteen hundred twenty-five dollars,) at its office in the city of Minneapolis, Minnesota, on the 22d day of September, 1900. All of said payment shall be made at the office of the said New York Mortgage Loan Company, in the city of Minneapolis, Minnesota. If the holder of this bond shall fail to make the payments due and herein provided for, during two years from date hereof, when due and payable, the liability of said New York Mortgage Company on said bond shall cease, and all moneys which have been paid on said bonds shall be forfeited to the use of said New York Mortgage Loan Company, and the holder of said bond shall have no further right or interest in or to the said money, or any part thereof. After two or more full yearly payments, or the equivalent amount thereof, in quarterly or monthly payments, has been made, then the said New York Mortgage Loan Company will pay to the lawful registered holder hereof as follows:

| If payments are made for the value of bond. | 3d year. $426 38 | 4th year. $580 00 | 5th year. $739 77 | 6th year. $905 90 |
|---|---|---|---|---|
| | 7th year. $1,078 96 | 8th year. $1,258 95 | 9th year. $1,446 06 | 10th year. $1,925 00 |

Provided, that, in case of any default as aforesaid, this bond must be presented at the general office of said company, in Minneapolis, within ninety days from said default, for the proper indorsement thereon of the amount that may be due; otherwise the liability of the com-

pany thereon will cease; or the company may, at its option, issue a new paid-up bond for said sum. The entire capital stock and assets of the New York Mortgage Loan Company are held subject to liability to pay and satisfy the sum accruing on this bond. Witness the seal and signature of the president and secretary of the company this 22d day of September, A. D. 1890.

[Corporate Seal.]                    A. C. HAUGAN, Pres.

F. H. ANSON, Secretary.

*C. E. Conant*, for appellants.

It is undisputed that the plaintiff, John W. Chase, borrowed of defendant only $5,025 for five years, and that he agreed to pay back to defendant, besides the expenses incident to making the loan, the sum of $5,775 and interest, a total of $7,796.25. The only question in this case is, whether that increase of $2,771.25 was wholly for interest on the $5,025 for five years, or a portion of it was for interest, and a portion of it a legitimate premium on three investment bonds bought in good faith, as a *bona fide* transaction, by plaintiff from defendant. Defendant's evidence admits, and the court finds, that plaintiff did not want to buy the bonds, and that he bought them solely because the defendant refused to make the loans unless, with each loan, plaintiff would buy a bond and pay a premium of $250. None of the bonds had been sold on the market at the time the loans were made. They show on their face that they could have no intrinsic value for three years after they were made; and after that they would be worth only the monthly payments made on them. Default of payment on the day when due during the first two years would forfeit to defendant all previous payments. If payments were kept up three or more years the bonds were worth what the monthly payments and a small interest thereon amounted to, but that sum was not payable until September 22, 1900, without interest. If payments should be kept up for full ten years plaintiff would receive back just about what the same monthly deposits in a *good savings bank* for ten years would amount to.

When not regulated by statute it is usury to take out or add interest in advance and thereby raise the amount paid for the use of the money loaned, beyond the highest rate of interest allowed by law.

Bankable paper may be discounted for the time such paper usually runs. *First Nat. Bank* v. *Davis*, 108 Ill. 633; *Marvine* v. *Hymers*, 12 N. Y. 223.

Our statute permits interest at ten per cent. per annum to be taken out in advance for one year only. Laws 1879, ch. 66, §§ 1, 3. Each note bears interest on its face at the rate of seven per cent. before due, and ten per cent. after maturity, and the statute declares that interest forfeited. Laws 1887, ch. 66, § 1.

If defendant forced the bonds into the loan contract as a mere cover, and to compel plaintiff to pay more than ten per cent. interest per annum on the money actually borrowed, the loan contract is usurious. The intent must be judged from the facts, and the facts are undisputed that plaintiff did not want the bonds, and that he paid the premium on them because he could get the loan in no other way; and the court will look through the transaction to discover the intent, not of the plaintiff, but of the defendant, and the rule of evidence is the same as in any civil action. *N. Y. Firemen Ins. Co.* v. *Ely*, 2 Cow. 703; *Lukens* v. *Hazlett*, 37 Minn. 441; *Stein* v. *Swensen*, 46 Minn. 360; *Quackenbos* v. *Sayer*, 62 N. Y. 344; *Knickerbocker Life Ins. Co.* v. *Nelson*, 78 N. Y. 137; *Catlin* v. *Gunter*, 11 N. Y. 368; *Fiedler* v. *Darrin*, 50 N. Y. 437.

*Chas. W. Purple* and *Penney & Jamison*, for respondent.

In the consideration of this case the court will bear in mind the position which appellant occupies. He asks that the contract be set aside for usury without first paying or offering to pay what he received with legal interest. He seeks to retain all the benefits and be exempt from the obligations. He seeks equity without doing equity. This he could not do elsewhere, and could not have done here, till the decision of this court in *Scott* v. *Austin*, 36 Minn. 460.

Standing in a court of equity upon a footing so inequitable, nothing short of the most satisfying and convincing proof of every element necessary to bring this transaction within the scope of the usury statute, will justify this court in reversing the findings of the trial court. The transaction being upon its face perfectly legal, the burden is on the plaintiff to prove conclusively the offense of usury,

and if he fails in any point, his case is so inequitable that it should not be helped out by any favoring presumptions upon doubtful points.

Plaintiff says: Our statute permits interest at ten per cent. per annum to be taken out in advance for one year only. We call the attention of this court to the fact that the word "only," while very essential to counsel's position in this matter, is not to be found in the statute. It says: "Provided further that the payment of interest in advance for one year at a rate not to exceed ten per cent. per annum shall not be construed to constitute usury." Plaintiff cannot ask the court to read this statute backward. It is highly penal in its provisions, and must be limited to what it says, not what plaintiff wishes to infer from its language. It cannot be extended by inference or implication, to the prejudice of one who is claimed to have offended against it. If it is usury for a man to make an eight per cent. loan for three years at a three per cent. commission, many mortgages on record in this state may be canceled for usury. There are no decisions on this point in this state because no one before has thought there was any such point to be made. *Brown* v. *Scottish Amer. Mortg. Co.*, 110 Ill. 235; *McGovern* v. *Union Mut. Life Ins. Co.*, 109 Ill. 151; *Upton* v. *O'Donahue*, 32 Neb. 565.

Taking the amount said to have been a bonus and spreading it over a period of five years, we find on each loan interest on $1,925, the face of the note, at seven per cent., $134.75. One fifth of the alleged bonus, $50, making $184.75. Ten per cent. on $1,925, would be $192.50. In the decisions above cited, the gross sum before discount is taken out, is the sum upon which the interest is reckoned.

The agreement into which these parties entered was a loan of money for ten years, not for five. If the acts of the defendant in dealing with the investment bonds are *ultra vires,* that is the concern of the state, not of a private person like plaintiff, who is not even a stockholder. *National Bank* v. *Matthews*, 98 U. S. 621; *National Bank* v. *Whitney,* 103 U. S. 99; *Merchants' Nat. Bank* v. *Hanson*, 33 Minn. 40.

VANDERBURGH, J.    The case, as presented on this appeal, is simplified by the findings of fact in defendant's favor, which substantially

dispose of the case. From these it appears that the defendant is a corporation engaged in the business of negotiating and making loans upon mortgage security. That on September 22, 1890, the plaintiff John W. Chase, then the owner of the certain lots of land described in the complaint, negotiated a separate loan with defendant on each lot, pursuant to the following plan, as found by the court, clearly understood and voluntarily entered into by the plaintiff: The amount loaned to him by the defendant was $1,675 on each lot, which he received in cash, less $10 to cover expenses of making the loan. The plaintiff at the same time, and as a part of the same transaction, bought of the defendant an investment bond, so called, in connection with each loan, for which he agreed to pay the sum of $250 premium, and the face value of which was $1,925, and also to make a monthly payment thereon of $11.17 for ten years, when the bond should mature; and by the terms thereof the defendant agreed to pay the plaintiff the sum of $1,925 upon the condition that the monthly payments aforesaid were continued. The case turns chiefly upon the validity of the purchase of the bond in connection with each loan.

The plaintiff, in consideration of the loan on these terms, executed a separate mortgage on each lot for $1,925, to secure his note for that sum, with interest at seven per cent. semiannually, payable in five years, with the privilege of renewal for five years longer, according to the terms of the application for the loan made by the plaintiff in writing, accepted and approved by the duly-authorized agent of the company. The court further finds that the plaintiff in this action had previously applied to the defendant company for a loan of money upon the houses and lots in question, desiring the sum of $1,675 on each lot; that the defendant refused to loan him so large a sum on the security of the lots alone, but offered to loan the amount asked in case he would invest in the bonds as proposed, and turn them over to the defendant as additional security, (because of the additional hazard,) which was done, and it does not appear that plaintiff had any other security to give. The defendant, however, offered to make a loan for a less sum upon what they termed " a straight mortgage;" that is, upon his note secured solely by mortgage upon the premises.

The court, moreover, expressly finds that the bonds were made in good faith, and were not used in the transaction as a shift or device to evade the usury laws, and to require plaintiff to pay more than ten per cent. interest on the money actually received, and that the plaintiff was fully advised of the nature of the bonds and the security required. The record supports these findings. The burden rested upon the plaintiff to show the transaction usurious. *Thomas* v. *Murray*, 32 N. Y. 612. Upon the argument the plaintiff urged that the execution and transfer to plaintiff of the bonds in question were *ultra vires*, but, as this point is not raised by any of the assignments of error, we cannot consider it. The objection to the reception of the evidence does not suggest it. The only assignment of error which it is material to consider is the tenth, which is that "the court erred in considering the bonds at all" in connection with the loan.

The difference between the amount received ($1,675) and the face of the note and bond ($1,925) is about $86 more than the difference between seven and ten per cent. for five years upon $1,675, if we add interest at seven per cent. upon the $250. So that, if the purchase of the bond is not to be considered, there was intentionally included in the note a sum in addition to the amount actually loaned in excess of what the law permits, and the loan was usurious. *Holmen* v. *Rugland*, 46 Minn. 400, (49 N. W. Rep. 189.)

But if the bond is a *bona fide* and valuable consideration for the plaintiff's obligation, and a part of the transaction for securing a loan, voluntarily entered into by him, as the court finds, then the transaction is not necessarily usurious, and this court will not declare it so in opposition to the finding of the trial court of the good faith of the parties, and the absence of any intent on their part to evade the usury law. There can be no presumption that the obligor is not responsible, or that the bond will not be paid according to its terms, or that it was not a valuable security. The monthly payments would amount, in ten years, to *$1,340*, when the plaintiff would be entitled to *$1,925*, as fixed in the bond, or the proportionate amount named in case the monthly payments were suspended after two years. The bond promised a secure investment for the premium, and for the small monthly payments, with a moderate interest

thereon, and also furnished the additional security which enabled him to procure a seven per cent. loan for a larger sum than he could otherwise procure on the lots. It was a question for him to determine whether, as a business transaction, it was wise and profitable for him to make the purchase, and for the trial court to determine whether it was *bona fide* or intended as an evasion of the usury law. Speculative schemes, in connection with the loan of money, should be very carefully scrutinized by the courts. But, if the bonds were lawfully issued and binding on the company, it afforded a consideration for the contract and the money paid by him, and, under the findings of the court, the mortgage is valid.

Whether the purchase of securities or other property, or the execution of a collateral contract in connection with a loan, as a part of the consideration and inducement therefor, is in fact a cover for usury, must ordinarily be determined as a question of fact. *Thomas* v. *Murray, supra; Valentine* v. *Conner,* 40 N. Y. 248.

If provision is made for full compensation to the borrower for all he may do under a collateral contract, the transaction is not presumptively usurious. *Clarke* v. *Sheehan,* 47 N. Y. 195.

Judgment affirmed.

MITCHELL, J., did not sit.

(Opinion published 51 N. W. Rep. 816.)