CATHERINE HAGAN and Another v. HENRY A. BARNES and Another.[1]

May 6, 1904.

Nos. 13,919—(54).

**Usury.**

> Action to cancel two mortgages as usurious. *Held*, that the finding and decision of the trial court that the transaction was a purchase and sale of land, and not usurious, are not sustained by the evidence.

Action in the district court for Sherburne county to cancel on the ground of usury two real-estate mortgages executed by plaintiffs to defendant Henry A. Barnes and by him assigned to defendant William Auslander. The case was tried before Giddings, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiffs appealed. Reversed.

*Harrison E. Fryberger*, for appellants.

*Tryon & Booth*, for respondents.

START, C. J.

The complaint herein alleged, in effect, that the plaintiffs were on February 18, 1899, the owners of eighty acres of land therein described, and that they borrowed from the defendant Henry A. Barnes, hereafter referred to as the defendant, $500, and no more; that, to secure the payment thereof, the plaintiffs on that day executed a mortgage on the land to the defendant for $500, payable December 1, 1903, with interest at six per cent. per annum, and also another mortgage for $172.86, with interest at the rate of seven per cent. per annum, payable in instalments, the last one being due December 1, 1903; that there was no other consideration for the mortgages, except the loan of $500, and that the mortgages constituted a single transaction, and were usurious

[1] Reported in 99 N. W. 415.

and void. This action was brought to cancel the mortgages on the ground of usury.

The answer denied that the mortgages were given to secure a loan of $500, or any other sum, and alleged, in effect, that the plaintiff Catherine Hagan held prior to February 18, 1899, a contract for the purchase of the land from the then owner for the sum of $775; that, she being unable to complete the sale according to the contract, the owner reduced the purchase price to $500, plus $13.45 expenses incurred by him, and he directed his deed of the land, which he had placed in escrow, to be delivered to her upon the payment of such sum; that, shortly before the day last mentioned, the plaintiff, being still unable to complete such purchase, agreed with the defendant, if he would purchase the land at the price for which the owner offered to sell it to the plaintiff, she would buy it from the defendant, and pay therefor $625 (that is, $125 more than he should pay for it, provided the defendant would give plaintiff time in which to make such payment), and that she would pay interest at the rate of eight per cent. per annum on the amount to be paid by her; that, pursuant to such agreement, the defendant paid to the owner of the land, for the delivery of his deed, $513.45, and, instead of causing the land to be conveyed to himself, and by him to the plaintiff, he, at her request, procured the delivery of the original deed from the owner to her, and caused it to be recorded; and, further, that the two mortgages mentioned in the complaint were executed and delivered to secure the agreed purchase price for the land, $625, and the necessary disbursements and expenses connected with the transaction.

The allegations of the answer were put in issue by the reply. The findings of fact by the trial judge were, in substance, that the allegations of the answer were true, and that the allegations as to usury contained in the complaint were not sustained by the evidence. As a conclusion of law, judgment was directed for the defendants on the merits. The plaintiffs appealed from an order denying their motion for a new trial.

Are such findings and conclusions sustained by the evidence? This is the only question which we find it necessary to decide. In considering this question, it is well to keep in mind the admitted facts in the case. They are these: The plaintiffs at the inception of the transaction were in actual possession of the land, and had been since the year 1890. The title to the land, however, for some time prior to 1899,

had been in the name of Rev. Samuel F. Bacon; but he had entered into an executory contract with a daughter of the plaintiffs to convey the land to her for $775, and, at the daughter's request, he made a deed to the plaintiff Catherine Hagan, and placed it in escrow, to be delivered on payment of $750. He afterwards reduced the amount to be paid to $500, and $13.45 expenses incurred by him. This amount ($513.45) was paid by the defendant, and the deed was delivered and recorded with the two mortgages made by the plaintiffs to the defendant, which were made and delivered to him before he paid the money for the deed. The former owner, Mr. Bacon, never had any negotiations with the defendant as to the sale of the land to him, never sold it to him, nor authorized a sale thereof to him. The daughter represented the plaintiffs in all their dealings with the defendant. She also secured the reduction of $250 in the purchase price of the land.

Upon the face of the papers, then, the transaction was a sale and transfer of the land by Mr. Bacon to the plaintiff Catherine Hagan, a payment of the purchase price by the defendant, and the execution of the two mortgages by the plaintiffs to him. Both mortgages were one transaction. Now, the question is whether there is any evidence in the record sufficient to sustain the finding of the trial court to the effect that the transaction was a purchase of the land by the defendant, a sale of it by him to the plaintiffs at an advance of $125, and the taking of the two mortgages by him to secure the purchase price. It is not a question of the weight of the evidence or the credibility of the witnesses, for, in determining the question, we must, where there is a conflict between the testimony on behalf of the plaintiffs and that on behalf of the defendants, accept that of the defendants.

The daughter testified, in substance, that she applied to the defendant for a loan, to be secured on the land, with which to pay for the land; that he refused, but said, if she could get the amount reduced to $500, he would make the loan; when she secured the reduction, she again applied to the defendant for the loan, and after some negotiations it was agreed between them that she should give him a bonus of $125, or one-half the reduction she secured in the amount of the purchase price, for a loan of $500, with interest at eight per cent. per annum; that two mortgages were given—one for $500, with interest at the rate of six per cent. per annum, and another for the bonus of $125, to which

was added two per cent. per annum to make the interest on the loan eight per cent. per annum (in all, $172.86).

The defendant testified that the daughter, Mrs. Zimmerman, applied for a loan on the land, which he refused. When the amount to be paid to obtain the deed for the land was reduced to $500, she again saw the defendant, and said:

> Mr. Barnes, you said you wouldn't make the loan? I said: Yes, that is so; we wouldn't make the loan. She said: Will you do this? If you will buy that property, take the deed, and resell that property to us—to me—we will pay you $625 for that property. And that is the transaction. · The transaction was a purchase and sale of this property. * * * These papers were notes and mortgages for $500, and a note and mortgage for $125, and included and added to that amount was the two per cent. on the $500, being the difference between six and eight per cent. for the full time of the loan—approximately, five years. I did not get a deed from Mr. Bacon to myself. Mrs. Zimmerman said we could take the Bacon deed; she would accept the deed as it was, or we could take it to ourselves. * * * When it was understood that it was important that no delay take place in paying this money and taking up the deed, we consented to accept the deed as it was, and not send for a new deed; that is, accept the deed, provided she would give me the same mortgage and same note I owned—I would have—if I received the deed from Bacon, and gave the deed to her, and then take back the mortgages. * * * The two mortgages and the two notes—the $500 and $172.86—were executed and delivered on February 18, 1899. I received those securities before I took up the deed. Having received these, I went ahead and took up the deed and recorded the papers.

The defendant was corroborated by the testimony of his brother, who was present at the negotiations, and who testified on his cross-examination as follows:

> Q. Didn't I understand you correctly that she first came to your office for the purpose of procuring a loan of $500? A. No; I think six or seven hundred dollars was my answer. Q.

Now, what took place next, you say, after that? A. She came later and stated it could be bought for $500, and she wanted to raise $500 to get this land at that time. We told her we wouldn't make the loan of $500, and she said: Won't you go in and buy this property, and furnish the money, and sell it to me for a consideration? Q. What bonus was your brother to get? A. I wouldn't call it a bonus. Q. It was $125 in excess of the $500? A. We were to sell her the property for $625, and she was willing to pay us that for the property. Q. She told your brother he could get it for $500 in cash? A. Yes, sir. Q. Then you say you understood her proposition was that your brother was to buy it for $500, and resell to her the same day for $625? A. She stated that she couldn't raise the money, and wanted to know if I wouldn't buy the property and resell it to her. Q. In that way she got the loan? A. Got the loan, and paid us what she considered what she was ready to pay for it. She was willing to pay $625.

In determining whether a particular transaction is usurious or not, the forms and names used by the parties are not important, for the court will ascertain the substance and effect of what the parties have done or agreed to do. There can be no device or shift under or behind which the law will not look to ascertain the real character of the transaction. Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265; Phelps v. Montgomery, 60 Minn. 303, 62 N. W. 260.

When this transaction is stripped of all fictions and alleged understandings, there is very little conflict in the evidence. If we consider the case from the standpoint of the defendant's evidence alone, in connection with the admitted facts, it is difficult to reach any conclusion other than that the transaction was a loan of money by the defendant to the plaintiff, secured by the two mortgages. It was just as clearly so as it would have been if the plaintiffs had been the legal instead of the equitable owners of the land, and had applied to the defendant for a loan of $500 to be secured on the land, which he declined to make, and then the parties had agreed that the defendant should buy the land of the plaintiffs for $500, and resell it to them for $625, and that, pursuant to this agreement, it was understood that the land had been so pur-

chased and resold, and thereupon the plaintiffs had simply executed the mortgages for the supposed purchase price upon receiving the $500. 27 Am. & Eng. Enc. (1st Ed.) 1021.

We hold that the finding of the trial court that the transaction in question was not a loan of money, but a purchase of land by the defendant, and a sale thereof by him to plaintiffs, is not sustained by the evidence. It is, however, the contention of counsel for the defendant that, even if the transaction be considered as a loan of money, there can under no possible view of the case be a finding of usury.

The first reason in support of the claim is that the defendant paid, in addition to the sum of $513.45, some $60 for taxes and the necessary disbursements connected with the transaction, and that if these two sums be added, and the amount taken as a basis for the computation of interest at the rate of ten per cent. per annum to the maturity of the mortgages, the interest would be greater, by some $12, than the total interest on the mortgages, computed at the agreed rate, to their maturity. The difficulty with this computation is that the amount paid for such disbursements was not made a part of the consideration of the mortgages. The testimony of the defendant, which we have quoted, shows how the amount of the mortgages, respectively, was arrived at. The disbursements were adjusted by the parties outside of the mortgages, and the note of Mrs. Zimmerman and her father taken for a portion of them, and an account rendered for the balance after the mortgages were given. Treating the transaction as a loan, the evidence shows that the amount of the loan was $513.45. Computing the interest on this amount to the maturity of the mortgages at the highest legal rate, it clearly appears that the mortgages were usurious.

The second reason is that there was no intention to evade the usury laws of the state. The defendant is presumed to have intended the necessary consequences of his acts. There was no claim of any mistake in computation in this case. Whatever was done by the parties was deliberately and intentionally done, and, if the result was a loan of money at a usurious rate, the conclusion follows that the defendants intended it.

It follows that the findings and decision of the trial court are not sustained by the evidence.

Order reversed and a new trial granted.