MIDLAND LOAN FINANCE COMPANY v. HERBERT W. LORENTZ.[1]

Nos. 32,552, 32,553.

January 24, 1941.

[1]Reported in 296 N. W. 911.

280

*Leonard, Street & Deinard,* for appellant.
*Frank J. Collins* and *John Ott,* for respondent.

JULIUS J. OLSON, JUSTICE.

Two actions, one to foreclose a conditional sale contract covering an automobile and the other in replevin to recover possession thereof as an incident of the foreclosure. The cases were tried together and resulted in findings adverse to plaintiff in the replevin case. The court dismissed the foreclosure case since "the outcome of the replevin action" determined that plaintiff "has nothing to foreclose." Motions for amended findings or a new trial were denied (except for certain amendments of the findings in the replevin action not material here), whereupon judgments were entered, from which plaintiff appeals.

The decisive question, as plaintiff sees it, is whether the transaction was "a conventional sale of an automobile by a dealer to defendant under a conditional sale contract, and a *bona fide* sale of the contract by the dealer to plaintiff, or whether, * * * plaintiff made a usurious loan to defendant to enable him to pay * * * the balance due on the car."

The court found the transaction to be a usurious loan. That finding is challenged because, so it is claimed, defendant has failed to meet "the burden of proving usury."

On August 5, 1937, defendant purchased from a dealer an automobile the cash price of which was $2,645. His Packard car was taken in trade as a "down payment" for $1,445, leaving an unpaid balance of $1,200. Defendant was without sufficient funds to finance the deal, and the question of how he could do so became the subject of some discussion between the dealer and defendant. Plaintiff's name was suggested as the medium through which the cash could be had. Defendant testified:

"Well, the balance due of $1,200—I was to buy my license extra—and that was to be financed with the Midland Finance Company. In other words, it was $100 a month that I was to pay, or $101—I think it was $100, and then there was a little balance over the 12th month that was supposed to be paid at that time to make it equal."

He signed a form of contract "in blank. * * * It was not filled in." On the same day the instrument, a conditional sale contract, was completed, apparently by the dealer. As written, it provided for the payment of $1,412, payable in 12 installments, $301 due September 15, 1937, and 11 installments of $101 each due on the 15th of each month thereafter, with interest after the maturity of each installment at eight per cent per annum. By its terms the dealer "purported to be vendor," defendant the vendee. It was made "concurrently with the loan transaction." In plaintiff's brief it is said: "Defendant's testimony is to the effect that he never agreed to pay more than $1,200," he "didn't buy anything for $2,857," that being the time payment sale price contained in the instrument as written.

In its memorandum the court said that it had "not the slightest hesitation in finding that the transaction as engineered by the plaintiff was usurious, and was so intended to be"; that it was "compiled, made and printed" by the plaintiff, who "placed" these printed contract forms "in the hands of its agents, the car salesmen, for use when the willing victim appeared. The testimony shows that before the contract between" the dealer "and the de-

fendant was completed" the dealer "was in communication by telephone" with plaintiff in regard to the terms of the contract, which was assigned on that very day to plaintiff; that all the dealer "had coming" upon acceptance of defendant's trade-in car was $1,200, which is the amount plaintiff actually paid to the dealer by its check in that sum. In addition, plaintiff on the same day also issued to the dealer "a deferred certificate" in the amount of $39, stating that there had been "deposited with this company" (plaintiff) that sum, "payable to the depositor [dealer] on or before after 1st payment upon return of this certificate, properly endorsed, with interest at 6 per cent per annum. Payable on condition that when [?] all notes given by * * * purchaser [describing the car involved] are paid in full, together with all interest thereon."

Defendant's exhibit 2 is typed upon an "invoice" bearing the dealer's name and address. This was deemed by the court to be of evidentiary value since it shows what the dealer "had coming after it took in exchange the defendant's" Packard car. It reads:

"Salesman   M. B. Cutter Jr.          Date   August 5th, 1937.
      Sold to   H. W. Lorentz
          709 Mtk. Mills Rd., Hopkins, Minnesota

| Description | | Unit Price |
|---|---|---|
| Cord Beverly sedan 812 model 1937 | | |
| Serial No. 2263S      Motor No. FB2189 | | 2645.00 |
| Packard 120 Club sedan | 1445.00 | |
| Midland Fin. check | 1200.00 | |
| | | 2645.00 |

      Paymts.   to be made to the Midland Finance Co. as foll:   1 @ 301.00 due Sept. 15th, 1937, and 11 @ 101.00 ea."

That part of our statute applicable to this controversy reads (2 Mason Minn. St. 1927, § 7038):

"*All* bonds, bills, notes, mortgages, and all other *contracts* and securities whatsoever, * * * *whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things in action than hereinbefore prescribed, shall be void* except as to bona fide purchasers of negotiable paper, in good faith, for a valuable consideration and before maturity, as hereinafter provided." (Italics supplied.)

The exception quoted is not material here since a conditional sale contract is clearly not "negotiable paper."

■ The statutory language is plain and unambiguous. And our cases, while not in complete harmony as to results reached, do establish that the question of usury is, generally speaking, one of fact. As such, each case depends upon its own particular facts and circumstances. Stein v. Swensen, 46 Minn. 360, 49 N. W. 55, 24 A. S. R. 234; Chase v. New York Mtg. L. Co. 49 Minn. 111, 51 N. W. 816; Grieser v. Hall, 56 Minn. 155, 57 N. W. 462; Stevens v. Staples, 64 Minn. 3, 65 N. W. 959; Banning v. Hall, 70 Minn. 89, 72 N. W. 817; Barry v. Paranto, 97 Minn. 265, 106 N. W. 911, 7 Ann. Cas. 984; Pomplun v. Hudson, 177 Minn. 321, 324, 225 N. W. 115.

■ The test to determine whether there is usury in a given case is whether the contract, if performed, will result in producing to the lender interest at a greater rate than that permitted by law, and whether that result was intended by the lender. Smith v. Parsons, 55 Minn. 520, 526, 57 N. W. 311 (which has been followed or cited with approval in many of our subsequent cases); Wetsel v. Guaranteed Mtg. Co. 195 Minn. 509, 513, 263 N. W. 605; In re Mansfield Steel Corp. (D. C.) 30 F. (2d) 832. In Andrews v. Andrews, 170 Minn. 175, 181, 212 N. W. 408, 410, 213 N. W. 899, 51 A. L. R. 542, this court held in affirming the findings of the trial court that it did not appear that performance of the contract would, with "any degree of certainty," "result in securing to the lender a greater rate of interest than is lawful," and "it cannot be said that it appears that the parties intended to evade the usury laws, or that it was claimant's purpose to exact a greater

return for the loan than the law allows." In Adjustment Service Bureau, Inc. v. Buelow, 196 Minn. 563, 567, 265 N. W. 659, we held, as a matter of law, that certain services rendered by the lender of money were so rendered for the purpose of getting for himself a return of more than the maximum legal rate of interest; hence that the loan was usurious.

In the Buelow case we reiterated the long established rule that (196 Minn. 567, 265 N. W. 661):

"Courts look to the substance and effect of transactions. There is no shift or device on the part of the lender to evade the law under or behind which the law [court] will not look to ascertain the real nature and object of the transaction." .

In Blindman v. Industrial L. & T. Corp. 197 Minn. 93, 99, 266 N. W. 455, 457, 267 N. W. 143, 104 A. L. R. 1253, we said, in reversing the trial court, which had found usury:

"A nugatory oral promise to pay excessive interest, if performed, and excessive interest actually received thereunder by the lender, would result in usury, not because of the invalid promise, but because the lender had actually taken and received the excessive interest. But, where no such excessive interest is taken or received, the mere executory promise, otherwise unenforceable and no part of the written contract, is of no effect."

This result was reached upon the theory that oral testimony was inadmissible to vary the terms of a written contract. Mr. Justice Loring dissented, but the only question upon which disagreement was based was limited to the claimed right of the borrower to show by oral testimony what he asserted the true arrangement to be.

In Bangs v. Midland Loan & Finance Co. 200 Minn. 310, 311, 274 N. W. 184, a conditional sale contract was involved. The trial court found it to be usurious. There plaintiff, who was in default under the contract at a time when there was a balance of $316 due on it, asked defendant company to refinance the obligation for him. Defendant entered into an "extension agreement"

with him whereby the parties agreed "to modify and extend the time and manner of the payments" so that the debt could be met over a period of 18 months, the sum to be paid by the borrower being $420. Defendant paid only the $316 due the former contract holder. Plaintiff defaulted under the extension agreement, and defendant repossessed the automobile. We held, in sustaining the trial court, that "there was a loan to or on behalf of the plaintiff in the sum of $316 and a written agreement to repay that amount in 18 months in all events, plus $104, a rate of interest far exceeding the highest rate allowed by statute."

■ In Bearl v. Edison Finance Corp. 206 Minn. 479, 480, 481, 288 N. W. 844, plaintiff had "signed a promissory note in blank, and a chattel mortgage, also in blank. He received the $200, but paid only the first installment of $21.10, then brought this action to cancel the note and mortgage for usury." There, as here, there was a denial of usury. The trial court found for plaintiff. The installment payments were 12 in number, each in the amount of $21.10, obviously in excess of the legal rate. We said: "The main burden of defendant's argument is that oral testimony was received to vary or contradict the written instruments evidencing the transaction." That rule we said was inapplicable since it was shown that the instruments upon which reliance was placed were "signed in blank" and later "the blanks were filled in by defendant in terms and figures differing from those agreed upon." It is interesting to note that the note and chattel mortgage were "for nine payments of $21.10 each and one for $10.10, together with interest at eight per cent per annum," thus bringing about what appeared on its face to be a valid contract. But we disposed of the case by saying that it was but "a part of a scheme, plan, device, and artifice in order to evade the usury laws." And, further, that the scheme or plan employed did not bring this case within the Blindman case, saying (206 Minn. 481, 288 N. W. 845):

"There the claimed usurious agreement was made prior to the execution of the note, and the note when signed did not embody that agreement but was legal on its face. In the case at bar, the

instrument being signed in blank, the holder had no authority to insert any other terms than those orally agreed upon."

Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 553, 289 N. W. 411, 413, is cited and relied upon by plaintiff. The findings of the trial court were for the defendant loan company, and the pivotal question presented there, as here, was whether the findings were sustained by the evidence. We said that the evidence does "not show that any cash sale price was agreed upon." Here it obviously was. There the finding was that there was no "loan of money" by the finance company but a purchase by it of a valid time sales contract and that the transaction did not "involve any usury."

Of course, no one will question the holding there to the effect that one may ask a higher price for his property on a time payment plan than when the deal is for cash. The important distinction between that case and this is that there the time payment contract was a valid one, while here it was but a subterfuge for the exaction of usury.

■ Another case relied upon by plaintiff is Minneapolis Discount Co. v. Croff, 201 Minn. 111, 112-113, 275 N. W. 511, 512. That action, too, involved a conditional sale contract covering an automobile, and an action in replevin to recover its possession was brought. The trial court held defendant's proof inadequate to establish usury. We sustained that view, saying:

"The point contended for by the defendants is that the purchase price inserted in the written instrument was greater than the sum agreed upon and that the excess amount represented a usurious charge for interest, thereby making the contract illegal and unenforceable."

Affirmance was placed upon the ground that defendants "do not contend that a contract embodying the *true agreement* would be usurious," therefore there could be no *contract* so to do. Undoubtedly what the writer of that opinion had in mind was what

Mr. Justice Mitchell said in Egbert v. Peters, 35 Minn. 312, 313, 29 N. W. 134:

"It [usury] is an illegal contract for a loan or forbearance of money, goods, or things in action, by which illegal interest is reserved, or agreed to be reserved or taken. Of course, there can be no usury without a contract."

■ All elements constituting usury are present here. The only contract upon which plaintiff relies for its recovery against defendant is the conditional sale contract. As written and sought to be enforced, it involves a "loan" of money or "forbearance" of a debt; the principal sum is payable absolutely and without any contingency; there is the exaction of a greater amount of interest or profit than is allowed by the law; and obviously there was an intention to evade the law since a person "is presumed to have intended the necessary consequences of his acts." Hagan v. Barnes, 92 Minn. 128, 133, 99 N. W. 415, 417.

■ As we have here a usurious contract, void under the statute, it follows that the one guilty of usurious exaction must bear the legal consequences flowing from such violation. As such he must lose not only the interest on the money risked, but also the principal, including as well all security given to secure performance. Jordan v. Humphrey, 31 Minn. 495, 18 N. W. 450; Ormund v. Hobart, 36 Minn. 306, 31 N. W. 213; Scott v. Austin, 36 Minn. 460, 32 N. W. 89, 864. (The final opinion in the last case is the one to be considered as establishing the applicable law, see 36 Minn. pp. 464 to 466.) See also Swank v. G. N. Ry. Co. 63 Minn. 258, 65 N. W. 452.

■ Whether plaintiff's situation is that of an assignee or an original party is unimportant since the involved contract is not within the statutory exception relating to "negotiable paper." Scott v. Austin, 36 Minn. 460, 32 N. W. 89, 864; Smith v. Parsons, 55 Minn. 520, 57 N. W. 311.

As to the legal principles involved, there is nothing distinguishing this case from that of Bearl v. Edison Finance Corp. 206 Minn. 479, 288 N. W. 844.

We have reviewed in this opinion only a limited number of our cases bearing upon this subject. For a more complete history and general background of this important and often abused statute, we refer to the following: "What is Usury in Minnesota," 21 Minn. L. Rev. 585; "Assignment of Conditional Sale Contract Contemporaneous with Usurious Loan," 22 *Id.* 447. The dissenting opinion of Mr. Justice Loring in Blindman v. Industrial L. & T. Corp. 197 Minn. 93, 100, *et seq.* 266 N. W. 455, 458-461, 267 N. W. 143, 104 A. L. R. 1253, is especially valuable because of its historic review of the law on usury.

While there are other assignments of error, examination of them does not disclose that reversal is required in either case. The decisive question has been determined adversely to plaintiff's contentions. That should end the controversy.

Both judgments are affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

UPON APPLICATION FOR REARGUMENT.

On March 7, 1941, the following opinion was filed:

JULIUS J. OLSON, JUSTICE.

Plaintiff asks that our original opinion "should be so modified as to preserve plaintiff's right to proceed against Madsen, the car dealer" and assignor of the conditional sale contract upon which the present suit was brought.

The petition is denied since Madsen was not a party to the cause and as such not "directly interested in the subject-matter" of the action. He had no right to control the proceedings or to examine and cross-examine witnesses, nor could he have appealed from the order or judgment finally entered. Clearly, then, no rights or remedies as between plaintiff and Madsen were in any way involved or determined in the present cause. Counsel should know that this is so since no one but the parties to the cause, or their privies, could be bound by the result here reached. Madsen has not intervened or applied for leave to become a party, hence

he is a "stranger" to this cause. 5 Dunnell, Minn. Dig. (2 ed.) §§ 7314, 7314a, and cases cited under notes; State v. Tri-State T. & T. Co. 146 Minn. 247, 251, 178 N. W. 603; State ex rel. Nordin v. Probate Court, 200 Minn. 167, 169, 273 N. W. 636.

Other matters concerning which complaint is again made were considered and determined in our former opinion, to which we adhere.

Petition denied.

