## Van Beil *v.* Fordney.

*Bill in Equity for Foreclosure of Mortgage.*

1. *Usury as defense to bill for foreclosure.*—Usury in the transaction may be set up in defense of a bill to foreclose a mortgage, filed by an assignee, unless the mortgagor has estopped himself from setting up that defense against the assignee; and the defense being established, the complainant can recover no interest.

2. *Same; question of intent.*—Usury *vel non* is, ordinarily, a question of intent, to be determined by the stipulations of the contract, the attendant circumstances, and the acts of the parties, contemporaneous and subsequent; but, when the contract is usurious on its face, or when it appears that a greater rate of interest than the statute allows was knowingly taken, though taken through ignorance or mistake of law, the unlawful intent is presumed, and the form of the contract is immaterial.

[Van Beil v. Fordney.]

3. *What contracts are usurious.*—A mortgage given to secure the payment of $648, as the amount due on a loan of $600 for twelve months, would be usurious, if it appeared that the money was loaned in several installments during the year, while the whole sum bore interest from the first day; but, where the mortgage refers to and describes the several drafts or notes which evidence the payment of the several installments, and authorizes a foreclosure on default being made as to any one or more of them, not specifying any date as the maturity of the entire loan, the mortgage is not usurious on its face; and the fact that the entire annual interest was paid at one time, for two or more years, does not render the transaction usurious.

4. *Subsequent promise to pay illegal interest.*—When the original transaction is not usurious, a subsequent agreement to pay illegal interest, in consideration of forbearance for an indefinite time, the original contract remaining in full force without change, does not impart to it the taint of usury; and subsequent payments of illegal interest will be regarded as partial payments on the debt, with interest.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 9th October, 1883, by Henry Van Beil, against Beates Fordney and his wife; and sought to foreclose a mortgage on certain lands in Mobile, which the defendants had executed to one Nathan Van Beil, by whom it was assigned, for valuable consideration, to the complainant. The mortgage, which was made an exhibit to the bill, was dated May 7th, 1870, and conditioned as follows: "These presents are upon the express condition, that if the said Beates and Mary A. Fordney shall well and truly pay to the said Nathan Van Beil the sum of $648, including interest, as is provided by six drafts drawn by said Nathan Van Beil, in favor of Beates Fordney, for $100 each, dated May 3, 1870, for value received—one payable at sight, one at 15 days, one at 30 days, one at 45 days, one at 60 days, and the other at 75 days—upon N. Van Beil, 38 Broadway, N. Y.; which said drafts represent money loaned to said Beates Fordney by said N. Van Beil,—then these presents shall cease," &c. The mortgage contained a power of sale, "upon the happening of a default in the payment of the notes above described;" and authorized the mortgagee, in the event of a sale, "to apply the proceeds first to the payment of the amount due on the said notes at the time of sale, and after of the amount to become due, deducting legal interest and the costs of sale."

The defendants answered the bill, and set up usury in the transaction as a defense; alleging that, by the original transaction with Nathan Van Beil, Beates Fordney agreed and promised to pay $48, annual interest on $600, although he received the money, not at the date of the mortgage, but at intervals of fifteen days, as shown by the several drafts; that under this agreement, on or about the 1st May, 1871, he paid $48 interest, and the like sum on or about the 1st May, 1872; that

[Van Beil v. Fordney.]

Van Beil then refused to continue the loan, except on the payment of twelve per cent. *per annum* interest, which respondents then agreed and promised to pay; and that under this new agreement, they had paid $60 annual interest, on or before the 1st May each year, from 1873 to 1880, inclusive ; and they insisted that the debt was fully paid.

On final hearing, on pleadings and proof, the chancellor held that the original contract was not usurious, and that the payment of $48 as the annual interest, for each of the years 1871 and 1872, did not affect it, but left $600 due as the amount of the debt when the new contract was made; that the agreement to pay twelve per cent. *per annum* was usurious, and the subsequent payments of $72 and $60 each were to be credited as partial payments on the debt without interest ; and deducting an additional payment of $100, made in May, 1873, he ascertained that the balance due complainant was $8.00 ; for which sum, with interest, a decree of sale was rendered.

The complainant appeals from this decree, and here assigns it as error.

W. S. ANDERSON, for the appellant.—The original contract between the parties, as shown by the mortgage, and as established by the evidence, was without any taint of usury ; and that is the contract the bill seeks to enforce by a foreclosure of the mortgage. If the subsequent agreement, set up in the answer of the defendants, be held usurious, they are to be regarded as the actors in asking relief against it, and must pay legal interest. If illegal interest was voluntarily paid, the defendants can not set it up as usury against a subsequent assignee. If the subsequent agreement was usurious, it can not affect the original contract, because it was void for indefiniteness ; and subsequent payments will be regarded as partial payment on the debt.—*Munter & Faber v. Linn*, 61 Ala. 492; Tyler on Usury, 111, 458; 3 Parsons' Contr. 115; *Nichols v. Fearson*, 7 Peters, 104; Jones on Mortgages, §§ 647–8; 34 N. J. Law, 461; 1 Suth. Dam., 577.

G. L. SMITH, *contra*.—The contract was usurious in its inception, as shown by the face of the mortgage and the testimony of the parties themselves; and the payments of the annual interest under it, for the years 1871 and 1872, show the construction and understanding of the parties.—*Mc Whorter v. Standifer*, 2 Porter, 519 ; *Williams v. Fowler*, 22 How. Pr. (N. Y.) 4–8 ; *Bazemore v. Wilder*, 10 Ala. 773 ; *Wright v. Elliott*, 1 Stew. 391. If there be any doubt as to the usury in the original contract, there can be none as to the subsequent agreement; and all payments made under it are to be deduct-

[Van Beil v. Fordney.]

ed from the principal debt.—Code, § 2092; *Ely v. McClung*, 4 Porter, 128. In other States, where usurious contracts are declared void, such subsequent promise would, of course, have no effect, and would leave the original contract in full force; but our statute only forbids the illegal interest, and requires payments to be applied in extinguishment of the principal debt.

CLOPTON, J.—The bill is brought by appellant, to enforce a claim by the foreclosure of a mortgage, executed by appellees to Nathan Van Beil, by whom the claim and mortgage were assigned, April 12th, 1883, to appellant. The appellees set up the defense of usury, both in the contract for the loan of the money, and in a subsequent contract, in 1873, for forbearance to collect the demand. The chancellor found that the original contract was not usurious, but that the subsequent agreement was, and decreed that the complainant was not entitled to any interest from the time of making the second agreement.

Usury in the transaction, out of which a mortgage arises, may be interposed as a defense to a bill for its foreclosure, although it may have been transferred and assigned to a third person, nothing having transpired to estop the mortgagor from making the defense; and when the mortgagee, or his assignee, resorts to a court of equity for relief, and the defense of usury is sustained, no interest will be allowed. Ordinarily, in construing the statutes against usury, the rule is, there must be an intention to contract for, and to take usurious interest—not necessarily an intention to *violate* the law; it suffices if there be an intention to take a higher rate of interest than the statute allows, though the parties may be ignorant of the statutory rate. When the usurious character of the contract does not appear from its expressed terms, but arises from stipulations ostensibly of compensation for risk, services, or other considerations, but really intended to yield to the creditor for the loan or forbearance a profit additional to the legal rate of interest, or is disguised under any cover, shift, or device, the form of the contract is immaterial, and the intent is the decisive test, to be ascertained from the attendant circumstances, and the acts of the parties, cotemporaneous and subsequent. In such case, the uniform doctrine is, that in determining whether the contract is usurious, the principal and ultimate subject of inquiry is the intention of the contracting parties. If the contract is usurious upon its face, or if it appears from the transaction itself that a higher rate of interest than the statute allows is knowingly taken, and is not the consequence of a mistake of fact, the intention is presumed, and is not a

material subject of further inquiry. When such is the neces-
sary effect of the contract, it is usurious, though made from
mistake or ignorance of the law. But, if an intention to take
more than the legal rate is not shown by the facts of the
transaction, nor presumed from the necessary consequence of
the terms agreed on, the contract will not be pronounced
usurious.—*Ely v. McClung*, 4 Por. 128; *Miller v. Bates*,
35 Ala. 560; *Uhlfelder v. Carter*, 64 Ala. 527.

It is true the first contract had its inception in an applica-
tion for the loan of money. The following are the facts, as
shown by the concurring testimony of the contracting parties.
Nathan Van Beil, the mortgagee, who resided in New York,
was in Mobile on a visit. While Van Beil was at the house of
the mortgagor in Mobile, he was applied to for the loan of six
hundred dollars, as the amount necessary to enable the mort-
gagor to complete a house he was then erecting, and proposed
to secure the loan by a mortgage on the property. Van Beil
consented to make the loan; but, not having the money with
him, he drew on himself six several drafts for the sum of one
hundred dollars each, payable to the order of the mortgagor, at
such times as it was supposed the money would be needed for
the intended purpose. The drafts were dated May 3, 1870,
the first payable at sight, and the other five each successive
fifteen days thereafter, the last being payable at seventy-five
days. By an understanding between the parties, Chamber-
lain & Co., who were Van Beil's correspondents in Mobile,
were to cash the drafts, and did cash each as they matured.
The mortgage was prepared by Henry Chamberlain, and was
executed May 7, 1870.

The transaction was not a "loan of credit." Both of the
contracting parties testify that it was a loan of six hundred
dollars, with interest at eight *per centum* for one year. It is
insisted, notwithstanding the evidence of the parties, that the
agreement to loan, when construed in connection with the
mortgage as a part of the contract, is usurious upon its face.
The argument is, that by the terms of the mortgage, the sum
of six hundred and forty-eight dollars was made payable one
year from its date; that interest can not be legally calculated
from the time of the agreement to loan, but from the time the
lender is deprived of, and the borrower acquires the use or
benefit of the money—in this case, on each one hundred dol-
lars, from the maturity of the drafts respectively; and that
the necessary consequence is, the mortgagor pays, and the
mortgagee receives, more than legal interest.

It is conceded that the drafts were equivalent to a loan of
the amount for which each was drawn, at the time each was
due; and all the mortgagee could legally take was interest at

[Van Beil v. Fordney.]

eight *per centum* from the time he was compelled or liable to pay the drafts. If the necessary consequence is, that the mortgagee obtains interest on the entire six hundred dollars from the date of the mortgage, we should be compelled, in the absence of proof showing that it was the result of a mistake in its preparation, to pronounce the contract usurious.— *Williams v. Fowler*, 22 How. Pr. Rep. 4. As it does not appear from the transaction, exclusive of the mortgage, that there was any intention to take usurious interest, and as there is no evidence tending to show that any device, unless it be the mortgage, was resorted to by the lender, to entrap the mortgagor, unconsciously, into paying more than legal interest, the inquiry will be confined to a construction of the mortgage, as illustrated by the transaction out of which it arose.

It must be conceded, that the mortgage is inartificially drawn. No definite time is expressed when a default may occur, or when the debt secured thereby is to be paid. The law-day is left to inference and construction. The mortgage provides, that upon the payment of " *the sum of six hundred and forty-eight dollars, including interest, as is provided by six drafts, drawn by said Nathan Van Beil, in favor of Bates Fordney, for one hundred dollars each, dated 3 May, 1870, for value received, one payable at sight, one at 15 days, one at 30 days, one at 45 days, one at 60 days, and the other at 75 days, upon N. Van Beil, 38 Broadway, N. Y., which said drafts represent money loaned to said Bates Fordney by said N. Van Beil.*" the mortgage shall be void ; and further, "*upon the happening of a default in the payment of the notes above described, to sell our interest in the lands,*" etc. Other than as may be inferred from the above quoted portions, there is no day fixed for the payment of the money loaned ; no express provision that it shall be payable one year from the date of the mortgage.

The statement of six hundred and forty-eight dollars, as the amount upon the payment of which the mortgage becomes void, indicates an intention that the whole sum shall be payable at the same time ; but this construction is inconsistent with other express provisions. The drafts being drawn by Van Beil on himself, payable to the order of, and indorsed by Fordney, were not intended to constitute evidences of the indebtedness from the mortgagor to the mortgagee. The office of their specific description by date, amount, and the times when payable, is to show their representation of the money loaned, at each time, and the date when it commences to bear interest. Such is the signification of the words, "*including interest, as is provided by six drafts,*" immediately preceding their description. The reference to them, in the power

6

[Van Beil v. Fordney.]

of sale, as "*the notes above described*," serves the same office, in determining when a default in payment may occur. Both the parties testify that the loan was for one year, but neither states from any definite time; and the mortgagor testifies, that the forty-eight dollars, mentioned in the mortgage, was for one year's interest on the loan at eight *per centum*. The sum of six hundred and forty-eight dollars, as stated in the mortgage, must have been intended to cover the aggregate amount of the loan, and interest thereon for one year, not from the date of the drafts, or of the mortgage, but from the time the amount of each draft was received by the mortgagor, according to its tenor and effect. Hence, the qualification, that the aggregate amount named includes interest as is provided for by the drafts. The legal provision of the drafts, as to interest, is, that the sum for which each was drawn, bears interest from the time such draft became due. In the event of a sale under the power contained in the mortgage, it is provided that the proceeds shall be applied, "first to the payment of the amount due on the said notes *at the time of sale*, and after of *the amount to become due* · deducting legal interest;" which authorizes a sale upon the failure to pay the sum due according to each draft, and is inconsistent with the construction that it was intended or understood that the aggregate amount of the drafts should become due at *one* time. By these provisions, the six hundred dollars loaned were, by the mortgage, payable in installments becoming due one year from the maturity of the representative draft.

The annual interest was not paid to the mortgagee, but to Chamberlain & Co., in Mobile. The payment of the entire interest for one year before the entire debt was due, when made, as it appears, voluntarily, is but slight, if any evidence of a previous usurious agreement, and will not vitiate a contract otherwise unattainted with usury. The first payment of interest was made several days before the day when the defendant claims the entire amount loaned was due, and so with each successive annual payment. We can not discover from the apparent inconsistent and confused provisions of the mortgage, or from the facts proved, an intention to take more than the legal rate of interest.

As the first contract is not tainted with usury, in what manner and to what extent is complainant's right of recovery affected by the subsequent usurious agreement? It may be stated as a uniform rule, that an obligation, free from usury in its origin, will not be tainted by a subsequent agreement to pay usurious interest, leaving the first contract in force, without renewal, · discharge, or cancellation. As respects mortgages, it is said in 1 Jones on Mort. § 647 :- "When a

mortgage is free from usury in its inception, no subsequent usurious contract in relation to it can affect the mortgage itself. It is only the subsequent contract that is affected by the usury." In those States where the statutes declare a usurious contract void *in toto*, the current of authorities is, that a debt, legal in its inception, will not be destroyed by a subsequent usurious agreement, although it may be thereby formally satisfied and discharged, and the security surrendered; but that on the subsequent security being annulled and avoided, the first is revived, and may be enforced, on the ground that a valid, subsisting contract is not affected by a subsequent invalid agreement.—*Real Estate Tr. Co. v. Kuch*, 69 N. Y. 248; *Swan v. Summers*, 2 Green (N. J.), 509; *Hammond v. Smith*, 17 Vt. 231; *Johnson v. Johnson*, 11 Mass. 359; *Patterson v. Birdsall*, 64 N. Y. 294; Tyler on Usury, 111; 3 Par. on Con. 115.

It is contended, that, inasmuch as under our statutes usurious contracts are not absolutely void, but voidable only to the extent of the interest, the rule is inapplicable. The cases in which it is said that such contracts are voidable only, must be construed in reference to the contracts in controversy—having both elements, principal and usurious interest; and not to a naked promise after maturity to pay mere usurious interest in the future on a previously legal and subsisting debt. An agreement by the principal debtor to pay usurious interest in the future, in consideration of the creditor's promise to extend the day of payment, will not discharge a surety; for the reason, that the promise of the creditor to give extension of time, not being founded on a sufficient legal consideration, is not valid, and consequently does not debar him from immediately enforcing the collection of the debt by pursuing his legal remedies against the principal debtor. The rule rests on the principle, that such agreement is void.—*Gilder v. Jeter*, 11 Ala. 256; *Cox v. Mo. & Gi. R. R. Co.*, 37 Ala. 320. In the case last cited, it is said: "A promise, on the part of the debtor, to pay usury in future, is an engagement which the law pronounces utterly void, and is, consequently, no consideration whatever for a promise by the creditor to give further time of payment. Such a contract for delay, not being binding on the creditor, does not discharge the surety."

The purpose of the bill is the enforcement of the first contract, which by law bore interest from its maturity. To avoid the payment of interest, the defendants allege that, after the maturity of the debt, the mortgagee agreed to forbear the collection of the principal in consideration of the mortgagor's promise to pay usurious interest. There was no settlement of the first contract, nor satisfaction, nor cancellation, nor renewal

of the debt, which would have constituted a new contract. Had there been a new contract, and usurious interest included therein, —a contract voidable only. as to the interest—the complainant, under the statutes would not have been entitled to recover any interest from the time it was made. But the first contract remained as originally made, without modification, the subsequent agreement being solely an indefinite extension of time of payment. This agreement, being supported by no other consideration than a promise to pay usurious interest in the future, is inoperative, and can not be enforced. Such agreement did not bind the mortgagee. To make it available, as a modification of the first contract, the defendants must establish it as a valid agreement; for a prior valid contract can not be settled, discharged, renewed, or modified, except by a subsequent agreement, founded on a sufficient legal consideration. The payments of usurious interest made thereafter are, in legal effect, payments on the debt, as if such subsequent agreement had not been made. When a rate of interest greater than the statute allows "is agreed to be paid after maturity, it is in the nature of a penalty, and has no effect; then the legal rate will govern, as though no agreement had been made."—1 Suth. on Dam. 577; 1 Whar. on Con. § 466.

Reversed and remanded.