DAVID SWANK v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 19, 1895.

Nos. 9610—(193).

**Judgment not Supported.**

The evidence considered, and *held* not to support the judgment.

**Interest—G. S. 1894, § 2212.**

*Held*, under G. S. 1894, § 2212, an agreement to pay more than at the rate of 7 per cent. per annum for the use of money cannot be enforced unless the agreement is in writing.

**Usury.**

*Held*, further, that under the same section and section 2214, an agreement to pay more than 10 per cent. per annum for the use of money is usurious and void.

[1] Reported in 65 N. W. 452.

Appeal by defendant from a judgment of the municipal court of St. Paul, in favor of plaintiff, entered in pursuance of the findings and order of Orr, J.  Reversed.

*C. Wellington,* for appellant.

*Palmer & Dickinson,* for respondent.

CANTY, J.  In the summer of 1892 defendant was engaged in the construction of. what is known as the "Red-Lake Falls Branch" of its railroad.  One Fogleberg had a contract to grade a certain portion of the roadbed, but had defaulted in performance.  Plaintiff had just finished a similar contract of another part of the roadbed, and had on hand the tools and appliances for that kind of work. Thereupon an agreement was made between him and defendant under which he proceeded to do the work contracted for as aforesaid by Fogleberg.  Plaintiff brought this action to recover a balance. claimed to be due him under that contract.  The case was tried by the court below, without a jury, and judgment ordered for plaintiff for the sum of $416.86.  From the judgment entered thereon, defendant appeals.

It is admitted by both parties that, by the terms of the agreement between them, plaintiff was to be allowed all sums expended in doing the work, and 10 per cent. of these sums for his compensation for superintending the work, and, in addition thereto, $20 per day for the use of his track, and $14.40 per day for the use of his dump cars.  It appears from the evidence that, during the progress of the work, plaintiff presented his itemized reports to defendant on this basis, and was paid for all of the same.  Thus, the pay rolls and other expenses for September amounted to $3,651.68, after which appears the item: "To 10 per cent. on above, for supervision and use of tools, $365.17."  Following this is a charge of $1,121.97 for use of cars and track.  This was all paid.  The pay rolls and other expenses for October amounted to $7,655.42.  Following this is the item: "Add 10 per cent., suptce. and use of tools, $765.54." Then follows an item of $894.40 for use of cars and track.  This bill is receipted by plaintiff.  The pay rolls and other expenses for November amount to $2,527.37.  Following this is the item, "Add 10 per cent., suptce. and use of tools, $252.73," to which is added $550.40, for use of cars and track.  This bill was also receipted by

plaintiff. These accounts cover the whole period of the work. Plaintiff admits that all of these payments have been duly made. It is conceded by both parties that all the sums due by the pay rolls, and all the other expenses incurred for work performed or material furnished by third parties, were paid directly by defendant to such third parties, except the sum of $577.90, for October, and $2,527.37, for November. These amounts plaintiff paid out of his own money, and was shortly afterwards reimbursed by the defendant. The plaintiff claims that, by the terms of his contract, he is entitled to an additional 10 per cent., or 20 per cent. in all, on these amounts, which he has actually paid with his own money. This the defendant denies, and this is the only controversy between the parties.

We are of the opinion that the terms of the original contract between the parties will not bear any such construction, and that, if the subsequent contract which plaintiff claims was made will bear this construction, it is, under our statute, not enforceable.

Plaintiff testified that he made his original contract with Col. Crooks, defendant's chief engineer. Said the witness: "I think the price was mentioned, but afterwards it was reduced to writing, what I should get. There was a memorandum made between me and him by Col. Crooks, in his handwriting. * * * It was made,—that memorandum that is in writing was made shortly after we commenced work; right after I started the work. Q. Mr. Swank, I call your attention to plaintiff's Exhibit D, and ask you if that is the memorandum which you say was made, and embodied substantially your understanding. A. Yes, sir; that is the paper, sir." Exhibit D was then offered and received in evidence, and defendant admitted that Col. Crooks had authority on behalf of defendant to make, and did make, the contract therein contained. Exhibit D is an unsigned memorandum, which reads as follows:

"Allow Mr. Swank the amount of pay rolls, the amount deducted for expenses and costs of powder and fuse, and ten per cent. of the same, added for use of tools and superintending work; also twenty dollars per day for use of track; fourteen dollars and forty cents per day for use of cars."

As to such subsequent contract, plaintiff testified: "Q. What conversation did you have with Colonel Crooks, during the progress of the work, with reference to that particular work? A. I had after-

wards, when Col. Crooks came to St. Paul—I needed some money for the purpose of buying powder and fuse, and I had to have the cash. The engineer in charge, Mr. Milliken, I asked him to furnish this money to buy powder and fuse and carry on this work, and he told me the best thing to do would be to come down to St. Paul, and see Col. Crooks.   *   * . *   I met Mr. Crooks in St. Paul, and I told him that it was necessary to have money to buy powder and to buy fuse, and I needed considerable money to carry on that work, and whether he would not advance it. Col. Crooks said,—he asked me whether I could get the money to do this work.   *   *   *   I told him it was necessary to use money up there for to supply those teams, and for various purposes, and that Mr. Milliken had sent me down to see him about it, and we couldn't carry on the work without money. Col. Crooks said this: He wanted to know whether I couldn't use my money, and I said, 'Yes.' He said: 'You go and keep an account or vouchers of all·the expenses; pay all freight bills, and for different purposes.' He said: 'You keep an expense account, and make it up into a voucher; and, for the use of this money that you so expend for powder and fuse and other necessary supplies, I will allow you ten per cent. for that;' and then the memorandum speaks for itself." This is all of the evidence which it is necessary to quote. The making of any such subsequent contract was denied by defendant's witnesses, but the issue was found against it by the trial court; so that the only question before us is whether the contract is enforceable.

Whether or not the original contract bound plaintiff himself to advance all this money in the first instance we need not consider. Neither need we consider whether the 10 per cent. referred to in the subsequent contract is the·same 10 per cent. agreed to be paid by the first contract, or whether it is an additional 10 per cent.; in other words, whether the subsequent contract is in fact a new contract at all, or anything more than a mere assertion by Col. Crooks to plaintiff of the amount of his compensation under the original contract. But conceding that it is not, and is in fact a subsequent agreement, by which plaintiff is promised an additional 10 per cent. for the use for a few weeks of his money so paid out, we are of the opinion that it cannot, in any event, be enforced beyond the rate of 7 per cent. per annum. G. S. 1894, § 2212, provides "that interest

for any legal indebtedness shall be at the rate of seven dollars upon one hundred dollars for a year, unless a different rate is contracted for in writing." There is no claim that any contract in writing was made for this interest. The same section and section 2214 declare void all contracts by which more than 10 per cent. per annum for the use of money is agreed to be paid. In this case the agreement seems to have been to pay 10 per cent. for the use of money for a week or two. There is nothing in plaintiff's claim that this 10 per cent. was for the use of the money, and for his work and labor. While the complaint so alleges, the evidence does not bear it out. His evidence on this point, not quoted above, is but his mere conclusion of the effect of his contract. This disposes of the case.

The judgment is reversed, and a new trial granted.