## BENJAMIN BLINDMAN AND OTHERS v. INDUSTRIAL LOAN & THRIFT CORPORATION.[1]

No. 30, 431.

April 9, 1936.

See 194 Minn. 462, 260 N. W. 867.

*William M. Serbine* and *Benjamin Peilen,* for appellant.

*Benjamin Segal, Maurice Sher,* and *William W. Fink,* for respondents.

I. M. OLSEN, JUSTICE.

Defendant appeals from the judgment.

The action was brought by the plaintiffs, the makers of the promissory note hereinafter described, to set aside and cancel the note on the ground of usury and to recover certain collateral securities transferred to the defendant as security for the payment of the note. The defendant denied that there was any usury and counterclaimed for the balance due on the note, the note having

[1]Reported in 266 N. W. 455, 267 N. W. 143.

been reduced by certain collections made on the collateral securities held by defendant. The note is dated December 18, 1931, and matured four months after date, according to its terms. There was interest at the rate of eight per cent per annum for the four-months period, amounting to $133.33, retained by the defendant at the time the note was given, and the balance of the money, $4,866.67, paid over to the plaintiffs.

The usury claim now presented by the plaintiffs is that prior to the signing of the note there was an oral agreement between the plaintiffs and the defendant that the note should be paid in four monthly instalments, on the 18th day of January, February, March, and April, 1932. The note itself reserved no interest before maturity, and the legal rate of six per cent after maturity. Plaintiffs rely solely on this oral agreement that the note, in contradiction to its plain terms, was payable in monthly instalments instead of in four months from date.

The case was tried without a jury, and the trial court found in plaintiffs' favor, that the note was usurious, and ordered its cancellation and the return of the collateral pledged therewith for its payment. Judgment was so entered.

The question is squarely presented whether, as found by the trial court, this oral agreement that the note should be paid on dates different from those stated therein can here be shown for the purpose of establishing usury. The evidence of this alleged oral promise or agreement not only contradicts the terms of the note itself, but it is in contradiction of the general rule that parol evidence cannot be shown for the purpose of varying the terms of a written contract made, covering the same subject, prior to the execution and delivery of the note.

There are numerous cases holding that on the question of usury parol evidence may be received to vary the terms of a written contract for the purpose of showing that it is illegal. There is a minority of decisions to the contrary. Lewis v. Willoughby, 43 Minn. 307, 45 N. W. 439, states the general rule that the fraud, illegality, or any other matter which, if proved, would affect the

validity of a writing, may always be proved by oral evidence. In that case, however, the oral evidence was introduced for the purpose of showing that a bonus was actually taken and that the price of the property there involved was made to include this bonus of $400. The evidence, as we take it, did not contradict the written contract except as to the amount of the consideration. This oral evidence did not tend to vary the terms of the chattel mortgage there in question, but went only to show that the amount of the mortgage debt included a $400 usury bonus; that this much was added under cover of the price of the chattels over and above the lawful interest and in excess of the debt secured. Evidence to show the actual amount of consideration of a contract is generally competent in any case where the question arises. Our attention has not been called to any other case in this state passing on the precise question presented.

Upon examination it will be found that most, though not all, cases generally cited in support of admission of parol evidence to show usury, when the result is to vary or contradict the terms of a written contract, are cases where some bonus, or other payment or consideration in excess of lawful interest, has been received by the lender in some form. That was all that appeared in Richeson v. Wood, 158 Va. 269, 163 S. E. 339, 82 A. L. R. 1189. In Stein v. Swensen, 46 Minn. 360, 49 N. W. 55, 24 A. S. R. 234, the agreement claimed to have been for usurious interest was in a written instrument, and the money had actually been paid thereunder. Few, if any, of the decisions apply the majority rule where the oral evidence varies and contradicts the express terms of the note or contract sued upon in other respects than in reference to the consideration. To allow the time of payment to be changed by parol evidence, while the contract is still executory, is a very different process from using similar proof to show conduct of the parties in performance of it, where it has been executed in whole or in part. The distinction is clearly noted in Koehler v. Dodge, 31 Neb. 328, 334, 47 N. W. 913, 914, 28 A. S. R. 518, where it is said:

"It is doubtless true that when a person borrows money and gives his note therefor, specifying a lawful rate of interest, a verbal prom-

ise of the borrower made at the time the indebtedness is incurred to pay an unlawful rate of interest for the use of the money would not of itself make the transaction usurious. Butterfield v. Kidder, 8 Pick. 512; Allen v. Turnham [83 Ala. 323], 3 South. Rep. 854; Van Beil v. Fordney, 79 Ala. 76; Bank v. Waggener, 9 Pet. 379, 400 [9 L. ed. 163]. But where the verbal agreement is carried into effect by the borrower, at the time of making the loan or subsequently thereto, paying the unlawful interest, or where it appears that the lender, in pursuance of the agreement, has by any shift or device reserved or secured a rate of interest in excess of that allowed by law, it will make the transaction usurious, notwithstanding the note given for the repayment of the money borrowed should on its face express a legal rate of interest."

In Butterfield v. Kidder, 8 Pick. 512, the court said:

"The verbal promise to pay eight per cent when the note was made, by which there was a promise to pay the money lent and lawful interest only, ought not to vitiate the note, for it was wholly without consideration and cannot be taken as part of the contract, which was in writing and must be considered as evidence of the intention of the parties. Supposing the agreement to pay and receive more than six per cent, the plaintiff could recover nothing but what is promised by the note; the additional promise was therefore wholly nugatory and cannot affect the note."

The parol evidence here relied upon was without legal effect. It changed not at all the obligation resulting from the written contract, it could not add to nor diminish that undertaking, it could not accelerate payment. Following the thought of Chief Justice Parker, in Butterfield v. Kidder, 8 Pick. 512, that which is wholly nugatory cannot have effect.

There can be no usury without a contract obligating the debtor to pay interest or return in excess of that provided by law, or else an actual payment or retention by the lender of such excessive interest. 66 C. J. § 110, p. 198, and cases cited in note 4.

There must be either a contract for the future payment of excessive interest or return, or a present taking or reservation of such

excessive interest or return. 66 C. J. § 110, p. 199, and cases cited in note 8.

A collateral oral agreement to pay interest in excess of the rate allowed by law is void and cannot be shown to vary the terms of the contract or note. Allen v. Turnham, 83 Ala. 323, 3 So. 854; Flint v Sheldon, 13 Mass. 443, 7 Am. D. 162; Butterfield v. Kidder, 8 Pick. 512; Bowers v. Douglass, 2 Head (Tenn.) 376; Hogmire's Lessee v. Chapline, 1 Harr. & J. (Md.) 29; F. B. Collins Inv. Co. v. Mills (Tex. Civ. App.) 254 S. W. 999; Koehler v. Dodge, 31 Neb. 328, 47 N. W. 913, 28 A. S. R. 518.

Payment of interest for a longer period than the money has actually been retained by the borrower does not render the note usurious. Grall v. San Diego B. & L. Assn. 127 Cal. App. 250, 15 P. (2d) 797; Cooke v. Young, 89 S. C. 173, 71 S. E. 837; Vela v. Shacklett (Tex. Com. App.) 12 S. W. (2d) 1007; Eldred v. Hart, 87 Ark. 534, 113 S. W. 213.

Under the evidence here presented, there has been no contract obligation entered into by which the plaintiffs could in any event be required or called upon to pay any amount in excess of the money borrowed with legal interest thereon, and no excessive interest has been paid or exacted. The invalid oral promise to pay the note before maturity has not been and cannot be enforced, even if there were no usury statute. The defendant has not taken, exacted, reserved, or received, and cannot collect, any excessive interest, and claims none.

This oral agreement or promise to pay the note in monthly instalments, made before the note was given, was merged and integrated in the note and could not thereafter be shown by either party so as to vary the express terms of the written contract.

2 Mason Minn. St. 1927, § 7036, provides:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than eight dollars on one hundred dollars for one year."

Section 7038 of the statute provides, in substance, that all bonds, bills, notes, mortgages, and all other contracts and securities, whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things in action, than at the rate of eight per cent per annum, shall be void.

What is prohibited by these sections is the reserving, securing, or taking of excessive interest or return by some contract.

The very first clause of § 7036 of the statute seems applicable. It provides that the interest rate for any legal indebtedness shall be at the rate of $6 upon $100 per year, unless a different rate is contracted for in writing. Accordingly, this court held in Swank v. G. N. Ry. Co. 63 Minn. 258, 65 N. W. 452, and again in Staughton v. Simpson, 72 Minn. 536, 75 N. W. 744, that any oral promise or agreement for interest in excess of six per cent per annum is invalid as to the excess. These cases did not involve claims of usury, but the holdings are based on the provisions of § 7036 of the usury statute. Neither the statute nor the decisions contain any exception or qualification limiting their application to cases where no question of usury is involved. This court should not now read any such limitation into the statute. The alleged oral promise here in question should be held ineffective and invalid for any purpose under this statute. It would be illogical to hold that a nugatory oral promise is invalid for any purpose, but may have validity and be sufficient to establish usury.

The usury statute is one imposing a penalty. There is no good reason why, at this late period of our industrial and legal development, it should not be applied with the same reasonable strictness as other laws imposing penalties. Mere nugatory offers or promises to pay excessive interest are not the things sought to be reached by the law. What is condemned is the actual taking or receiving of excessive interest, or the inclusion in the contract, otherwise valid, of a contract obligation to pay excessive interest. The statute expressly permits the payment or retention of lawful interest in advance for a period up to one year.

A nugatory oral promise to pay excessive interest, if performed, and excessive interest actually received thereunder by the lender, would result in usury, not because of the invalid promise, but because the lender had actually taken and received the excessive interest. But, where no such excessive interest is taken or received, the mere executory promise, otherwise unenforceable and no part of the written contract, is of no effect.

As already noted, there were transferred to the defendant, as collaterals to the note, certain trade accounts, to be collected or paid and applied on the note. Collections were made on these accounts and credited in plaintiffs' passbook, hereinafter referred to, commencing about January 11, 1932, and continuing up to June 29, 1932, covering times both before and after the maturity of the note. All payments were moneys so coming from these accounts, and all moneys so received were properly credited. After crediting all payments made, there remains a balance of some $1,373.80 unpaid on the note. No payments of $1,250 are shown to have been made at any time. There were some 19 payments in all, made during the time stated, varying in amount from a few dollars to $687.72, the largest one. All these payments were from the collateral accounts held by defendant.

Plaintiffs give weight to some notations on a two-leaf folder furnished to Benjamin and Harry Blindman, in which to keep a record of payments made. The folder is designated a "passbook." It does not purport to contain any agreement by anyone and is not signed by anyone. The most that can be said for it is that it may to some extent corroborate the testimony of Benjamin Blindman and Benjamin Solomon that there was some oral agreement that the note was to be paid in instalments as claimed. It may be noted here also that this money was borrowed for Benjamin and Harry Blindman, doing business under the name of the Grand Fur Company. The three other plaintiffs, Benjamin Solomon, F. S. Blindman, and I. Silverman, signed the note as accommodation makers. Of the plaintiffs, only Benjamin Blindman and Benjamin Solomon testified as witnesses in the case.

In Blindman v. Industrial L. & T. Corp. 194 Minn. 462, 260 N. W. 867, an action to cancel a promissory note given by these same parties to this defendant on February 4, 1932, a like claim of usury was presented. That note, according to its terms, was payable in one year. The claim was that there was an oral agreement that the note should be paid in monthly instalments. The trial court found there was no usury. The question presented and passed upon by this court was whether the evidence sustained the court's finding. The finding of the trial court was sustained.

In conclusion, attention may be called to the established rules in this state that the usury law is a shield for defense and not a sword for offense, and that the burden of proof rests upon the party claiming usury to negative, by his evidence, every fact which, if true, would render the transaction lawful.

The conclusion reached is that there is no evidence in the case to sustain a finding of usury.

The judgment appealed from is reversed with directions to the trial court to amend its findings and conclusions of law accordingly and to cause judgment to be entered in defendant's favor for the amount found by the trial court to be due and owing upon the note in question.

Reversed.

LORING, JUSTICE (dissenting).

The opinion of the majority appears to be a departure from our previous interpretation of our usury laws and our previous attitude toward the admissibility of evidence to show usury. As I view the effect of the decision, it makes it remarkably easy for a usurer to avoid the penalties provided by statute and to exploit the necessitous borrower. The reasons advanced to support the conclusion are, to me, not persuasive. As I view the matter, usury statutes are on the books to prevent oppression of necessitous borrowers whether or not the loans be made by contracts fair and legal on their face. The question should not be whether the usurious contract is enforceable in the courts were there no usury law. There can be no binding reservation of interest at a rate other than six

per cent unless it is in writing, and no usurer is likely to put his usurious contract in writing. Usually he adopts some written device to conceal it. It is the actual arrangement to pay illegal interest that the law should penalize. Hitherto the courts have looked through the camouflage of legality thrown up by ingenious usurers and have viewed the actual, not the ostensible, arrangement made by the parties. That the actual arrangement was in fact nugatory in the sense that it was illegal and hence unenforceable has not, except in a minority of states, been a defense.

The Mosaic law prohibited the Jews from exacting interest on loans to their brethern but permitted interest to be taken from Gentiles. 66 C. J. p. 142; Exodus XXII, 25; Leviticus XXV, 35-47; Deuteronomy XXIII, 19, 20; Psalms XV, 5. Sir Edward Coke regarded the taking of interest as directly against the law of God, but the necessities of commerce ultimately required the lending of money at moderate rates, and, in the sixteenth century, Parliament legalized contracts for interest not exceeding ten per cent. In 1714 it was reduced to five per cent, where it remained until 1854, when apparently the necessities of commerce succeeded in removing all restrictions on interest charges.

As early as 1717 the colony of New York enacted a law against usury with a penalty of treble the value of the money lent. Curtiss v. Teller, 157 App. Div. 804, 810, 143 N. Y. S. 188. The opinion in that case gives a very enlightening history of the law of usury in New York until it took final form in substantially that enacted in this state in the provisions which now appear in 2 Mason Minn. St. 1927, c. 51, relating to interest and negotiable instruments. Section 7036 fixes the legal rate of interest and the maximum rate which may be lawfully charged by lenders of money. Section 7037 authorizes the recovery of the entire interest paid by the borrower where he has paid in excess of the permitted rate. It provides that one-half of the recovery shall go into the county treasury for the common schools. Section 7038 makes void all contracts which reserve a greater rate than that permitted by § 7036. The word "reserved" as used in that section obviously means "contracted for." Section 7040 provides for the cancellation, by the courts, of usurious

contracts. Section 7039, requiring alleged offenders against the usury law to answer complaint under oath, obviously came in to overcome some of the difficulties arising under the old equity practice described in Curtiss v. Teller, 157 App. Div. 804, 143 N. Y. S. 188.

Our usury statutes are undoubtedly patterned after the provisions of the New York code. They are the result of legislative efforts to curb the practice of extorting from necessitous borrowers excessive rates of interest. In a majority of our states the statutes carry some penalty, ranging from forfeiture of the interest only, up to forfeiture of principal and interest and fine and imprisonment. It was unquestionably the intent of our legislature, in making the usurious agreements void, that there could be no action to enforce such an agreement and that as a result, where the contract was still executory, the lender would forfeit both interest and principal. It must have been thought that the forfeiture would be sufficient penalty to discourage the taking of usury. It is significant that the statutes provide two distinct remedies for a borrower: First, a suit for cancellation and surrender of any instruments given pursuant to an usurious agreement and the return of any security, while the contract is still executory; and, second, an action to recover interest paid after the usurious contract has been executed, one-half of the recovery to go to the schools.

This court is committed to the liberal doctrine that the law will look behind any device or shift on the part of the lender to evade the usury statute in order to ascertain the real nature of the transaction. In Elwell v. Lund, 102 Minn. 166, 112 N. W. 1009, 1067, this court had before it a case where a usurious loan was disguised by a written contract as a sale with the privilege of repurchasing. Elwell and his partner were endeavoring to purchase a stock of merchandise. They sought a loan from Lund, offering a highly usurious rate. Lund took title to the stock and agreed to resell it to Elwell at $10,000 advance in price, that being the amount Elwell had offered for the use of the money. It was there contended, as it is here, that whatever the original proposals or arrangements had been, the transaction was finally integrated and consummated as a

sale with the privilege to the plaintiff of purchasing the property at a stated price. There, as here, the oral contract to pay a usurious rate claimed by plaintiff was unenforceable and nugatory because for a rate higher than six per cent and not in writing. There, as here, the written contract of sale and option to purchase was fair and legal on its face and so held to be by this court, but the court said [102 Minn. 169]:

"If the writing, Exhibit B, represented the actual agreement between the parties, made in good faith with no purpose to evade the usury laws, it must be conceded that the transaction was a sale, or at least a joint venture, and not subject to attack; but we cannot agree with the learned counsel that this question must be determined from a consideration of the writings alone. If this were true, the usury laws might as well be repealed, as it would be a very simple matter for counsel to draw contracts and arrange papers which in form would be regular, and thus render the transaction impervious to attack, although as a matter of fact the writings represented the ostensible, and not the actual, transaction between the parties. In order to determine whether these writings represent the actual arrangement, it is necessary to consider the surrounding circumstances and the conditions under which the writing was drawn and executed as well as the conduct of the parties prior to, at the time of, and subsequent to its execution."

See also Lewis v. Willoughby, 43 Minn. 307, 311, 45 N. W. 439; Stein v. Swensen, 46 Minn. 360, 49 N. W. 55, 56, 24 A. S. R. 234; 27 R. C. L. 212; Seekel v. Norman, 71 Iowa, 264, 32 N. W. 334. In the Stein case Mr. Chief Justice Gilfillan said [46 Minn. 363]:

"On the examination of Vaughn, a witness for defendants, they asked him if there was an oral agreement, in addition to said instrument, for an extension or extensions of the notes upon payment of a commission, at the time of the original loan. As there is no device or shift on the part of the lender to evade the statute under or behind which the law will not look, in order to ascertain the real nature of the transaction; as no act, however formal, no instrument,

however solemnly executed, will stand in the way of the court getting at the truth, in order to determine whether there has been an attempt to evade the law, it was competent to prove the oral agreement indicated by the question."

Hitherto it has not been suggested that the consideration was the only element of the contract that could be gone into by parol to show usury.

The ostensible agreement here, as evidenced by the written contract, was to pay $5,000 four months after date. Interest had been deducted in advance. The real agreement between the parties, as well found by the trial court, was that in consideration of a loan of $4,866.67 the plaintiffs agreed to repay $5,000 in four equal monthly instalments of $1,250, the first instalment being due one month after the loan was made. An expert accountant figured the rate of interest to be 14.68 per cent. In any way it may be figured the rate exceeded the legal rate then in force. As said in substance in Elwell v. Lund, 102 Minn. 166, 112 N. W. 1009, 1067, to hold that the real agreement cannot be shown by parol would nullify our usury laws.

The contrary rule which forbids the introduction of oral evidence to prove usury in a note, legal on its face, seems to have been adopted by Massachusetts and a few other courts but does not appear to have found favor in the eyes of this court until now.

If the rule be, as laid down by the majority, that parol evidence may not be introduced to show the real bargain and that the paper executed by the borrower is only the ostensible one, then it will be a simple matter for usurers to protect themselves against the statutory penalties by taking an instrument fair on its face and, in case of trouble, resorting to it under the claim that it is the integrated contract. That is just what this court in the Elwell case said the usurer could not do. No usurer will be naive enough to write out the usurious bargain, and in effect there will now never be a case for the application of § 7038 except where the note or obligation is given for a larger principal than that actually received. After the cases penalizing the usurer in such circumstances it will be a very ignorant usurer who will resort to that device, and usurers are not

ignorant. It is the necessitous borrower who usually suffers from that affliction or from the equally handicapping necessity of keeping his precarious credit good with the usurer. If it becomes known that he takes advantage of the usury laws he never can borrow again. How effective is this influence is demonstrated by the fact that usury is notoriously prevalent, and usury cases are amazingly rare. As said by this court, speaking through Mr. Justice Olsen in Adjustment Service Bureau, Inc. v. Buelow, 196 Minn. 563, 567, 265 N. W. 659, 661:

"The object of the usury laws is to protect the weak and necessitous from oppression. 6 Dunnell, Minn. Dig. (2 ed.) § 9962. Courts look to the substance and effect of transactions. There is no shift or device on the part of the lender to evade the law under or behind which the law will not look to ascertain the real nature and object of the transaction. 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 9965, and cases cited in note 36."

The borrower and the usurious lender are not on an equal footing, and it is the purpose of the law and the duty of the courts to protect the borrower. In order to do this the courts, as in all cases of fraud or illegality, allow parol evidence to show the real transaction. 3 Jones, Evidence (2 ed.) § 1522. The borrowers are probably not more prone to perjury than the lenders. Under our previous decisions it became a question to be disposed of as other issues of that character. In the case at bar there was documentary corroboration of the alleged oral contract. As well said by the Supreme court of Iowa in France v. Munro, 138 Iowa, 1, 7, 115 N. W. 577, 579, 19 L.R.A.(N.S.) 391:

"The game of hide and seek between the usurer and the law is not the product of recent evolution, and the rule has long been settled that, as in case of fraud in general, the rule referred to will not be allowed to exclude proof of the true nature of a contract into which the usurer is alleged to have entered. Seekel v. Norman, 71 Iowa, 264, 32 N. W. 334; Train v. Collins, 2 Pick. 145; Scott v. Lloyd, 9 Pet. (U. S.) 418 (9 L. Ed. 178). Says the Minnesota court: 'All that is required to establish a case of usury is a fair preponderance

of the evidence, and there is no shift or device on part of the lender to evade the statute under or behind which the law will not look to ascertain the real nature of the transaction.' Phelps v. Montgomery, 60 Minn. 303 (62 N. W. 260)."

The courts should look through every device used by the usurer to evade the law as well as the simple and now unusual one that relates to the consideration. It may be that the penalty for usury is too harsh. I am inclined to think it is and that loss of a minor percentage of the principal would be a sufficient penalty. But the harshness of the penalty should not lead us to establish rules which in effect nullify the usury laws and protect the usurer. After this decision we may expect him in his "game of hide and seek" to adopt a new and very effective technique to protect his principal and legal interest. He will have only the excess at stake.

UPON APPLICATION FOR REARGUMENT.

On May 8, 1936, the following opinion was filed:

PER CURIAM.

Plaintiffs' petition for rehearing is denied. The decision here remands the case to the district court to determine the amount due. If, as plaintiffs now claim, there have been further payments made from the collaterals held by defendant, the plaintiffs are granted leave to apply to the district court, on proper notice to defendant, for leave to present evidence to show any such payments made since the action was commenced.